# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Third Coast Fresh Distribution, L.L.C. ) ASBCA No. 59696
)
Under Contract No. SPE300-14-D-P245 )

APPEARANCES FOR THE APPELLANT: Kenneth A. Martin, Esq.
 The Martin Law Firm
 McLean, VA

 Carol L. O'Riordan, Esq.
 Anthony J. Marchese, Esq.
 The O'Riordan Bethel Law Firm, LLP
 Washington, DC

APPEARANCES FOR THE GOVERNMENT: Daniel K. Poling, Esq.
 DLA Chief Trial Attorney
 John F. Basiak, Jr., Esq.
 Keith J. Feigenbaum, Esq.
 Kari L. Scheck, Esq.
 Trial Attorneys
 DLA Troop Support
 Philadelphia, PA

## OPINION BY ADMINISTRATIVE JUDGE MELNICK ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND MOTION FOR SUMMARY JUDGMENT

This appeal involves a small business set-aside contract awarded to appellant, Third Coast Fresh Distribution, L.L.C (TCF), for delivery of fresh produce around Dallas, Texas. After award, the Small Business Administration (SBA) found that TCF had not been complying with an element of the "Nonmanufacturer Rule" located at 13 C.F.R. § 121.406(b), and therefore could not be considered small for the procurement. The government terminated the contract for cause and appellant now seeks conversion to a termination for convenience, plus costs. The government has filed motions to dismiss the appeal for lack of jurisdiction and for failure to state a claim. Alternatively, it seeks summary judgment.

The Board possesses jurisdiction over TCF's challenge to the default termination, but not its request for contract costs since they have not been the subject of a claim submitted to the contracting officer. Therefore, the motion to dismiss for

lack of jurisdiction is granted in part and denied in part. On the merits, because the government's motion relies upon matters outside the pleadings, it is treated as one for summary judgment. The undisputed facts demonstrate the termination for cause was justified, and TCF has failed to present sufficient evidence to establish that it was excusable. Accordingly, the government's motion for summary judgment is granted.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 16 January 2013, DLA issued commercial items Solicitation No. SPM300-13-R-0046 for the purchase of a full line of fresh fruits and vegetables for the "Dallas TX Zone." The solicitation was a small business set-aside. (R4, tab 1 at 1, 4, 9) Accordingly, the solicitation incorporated FAR 52.219-6, NOTICE OF TOTAL SMALL BUSINESS SET-ASIDE (ALTERNATE I) (NOV 2011) (R4, tab 1 at 47). Paragraph (b)(1) of that clause provided that offers were "solicited only from small business concerns," and "[o]ffers received from concerns that [were] not small business concerns [would] be considered nonresponsive" and therefore rejected.

2. The solicitation explained that the "Dallas TX Zone" contained two groups. Group 1 contained Department of Defense (DoD) customers, while Group 2 was non-DoD, including schools and tribes. It stated the government intended to award one indefinite–quantity contract to include both groups, but reserved the right to make multiple awards based upon technically acceptable offers for each group. For that reason, offerors were instructed to submit separate best proposals for each group. The total length of the contract, including base and option periods, was not to exceed 54 months. (R4, tab 1 at 9, 76)

3. TCF submitted a proposal in response to the solicitation stating that it would use a cross-dock facility to make deliveries to customers in the Dallas/Ft. Worth area (compl. ¶ 42).

4. After DLA announced that TCF was the apparent awardee for Group 1, an unsuccessful offeror filed a size protest against TCF on 23 December 2013. The protest alleged that TCF did not qualify as a small business entitled to a set-aside contract because of its affiliations with other entities, and that TCF had failed to comply with the Nonmanufacturer Rule located at 13 C.F.R. § 121.406(b). (R4, tab 9) That rule conditions small business status for a nonmanufacturer seeking to supply manufactured items upon, among other things, the nonmanufacturer taking ownership or possession of the item(s) with its personnel, equipment or facilities in a manner consistent with industry practice. On 14 February 2014, the SBA Area V Regional Office denied the size protest, determining that TCF was "a 'small business' for the subject procurement" and was therefore "eligible for contract award" (R4, tab 13 at 386). Along with rejecting the allegation about TCF's affiliations, SBA found that TCF complied with the Nonmanufacturer Rule because TCF would take "ownership

2

and possession of the produce from the manufacturer/growers at its 65,000 square foot Houston location," and planned "to warehouse and deliver the produce itself" (R4, tab 13 at 384). SBA observed that:

> TCF will allow one day for travel and the second for delivery, or will use a cross-dock location that TCF will lease in Dallas. At the cross dock location, the delivery trucks from Houston will unload and reload onto local trucks that will be operated by TCF. In either instance, TCF will use its own trucks and drivers for delivery. TCF may use subcontractors for portions of the delivery but largely plans to deliver with its own personnel.

(R4, tab 13 at 385)

5. On 27 February 2014, DLA awarded the Group 1 component of the solicitation to TCF, which became Contract No. SPE300-14-D-P245 (R4, tabs 14-15). The contract incorporated the terms and conditions of the solicitation (R4, tab 15 at 405). Those terms included, with some modifications, FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (FEB 2012) (R4, tab 1 at 44). Paragraph (f) of the clause noted the contractor "shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence." Paragraph (l) reserved to the government "the right to terminate this contract...for its sole convenience." As in the standard clause, the modified version of paragraph (m) permitted the government to "terminate [the] contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions." It also provided that if it was "determined that the Government improperly terminated [the] contract for default, such termination shall be deemed a termination for convenience." (R4, tab 1 at 45)

6. According to TCF's chief operating officer, had it received award of the solicitation's entire set of requirements, it would have performed the contract as it had represented, by transporting produce using its own trucks and drivers from its Houston facility to its Dallas cross-dock location, and then delivering the product (app. opp'n, ex. 1, Abess decl. ¶ 4(j)). However, because the government only awarded TCF Group 1, TCF did not find it economically feasible to use the cross-dock facility. Instead, TCF ordered product directly from growers, suppliers, and wholesalers, and used third parties such as Brothers Produce to ship the produce directly to customers in the Dallas area. (Compl. ¶¶ 12-13; Abess decl. ¶¶ 6-7, 16; R4, tab 20 at 430-31)

7. During the first month of performance, the contracting officer became aware that Brothers Produce was making deliveries under the contract (gov't statement of facts

3

¶ 5; compl. ¶ 22). On 16 April 2014, Mr. George Finch of TCF participated in a phone conversation with DLA. On 22 April, Mr. Finch confirmed by email the accuracy of a description of that conversation prepared by Ms. Debbie Vaughan of DLA. Ms. Vaughan stated that Mr. Finch was requested to confirm the places of contract performance that TCF had provided under the contract's FAR 52.215-6, PLACE OF PERFORMANCE (OCT 1997) clause. Mr. Finch concurred that TCF had identified its facility in Houston and a cross-dock location in Dallas. Mr. Finch was informed that a DLA representative had reported that she had "never seen [TCF] make any deliveries." Mr. Finch "confirmed that was true and added that [TCF] uses Brothers Produce as a subcontractor to make deliveries." (R4, tab 16)

8. On 6 May 2014, the contracting officer commenced a post-award size protest of TCF with SBA. The contracting officer described DLA's 16 April 2014 conversation with Mr. Finch, as well as SBA's 14 February 2014 size determination. He suggested that "TCF's performance [was] in stark contrast with the statements" that SBA had attributed to TCF in its prior determination and therefore sought "an opinion from the SBA regarding TCF's compliance with the underlying small business rules." (R4, tab 17 at 420-21)

9. On 30 May 2014, the SBA Area V Regional Office issued a size determination superseding its prior determination of 14 February and concluding that TCF was "'other than small' for the subject procurement" (R4, tab 20). SBA first quoted statements it said TCF presented in response to the prior protest, where it said:

> Third Coast Fresh will not be dependent on any third party distribution provider, large or small, for the performance of DLA's contract. The Third Coast Fresh company purchases its inventory to satisfy its customers' requirements, including DLA's requirements. Third Coast Fresh is not dependent on any other entity, large or small, to obtain purchasing, warehousing, or distribution support, and it will not utilize subcontractors to perform primary and vital requirements of the contract.
>
> [....]
>
> For its performance of the contract Third Coast Fresh will service these accounts from its Houston, Texas warehouse. Third Coast Fresh will take ownership and possession of the produce at its Houston, Texas warehouse.
>
> [....]

4

> Third Coast Fresh will then transport DLA's skip day
> orders of good[s] from its Houston warehouse to the Troop
> sites utilizing one of two delivery options. It will either
> use its own personnel and trucks, allowing one day for
> travel and the second for delivery; or, as an alternative,
> Third Coast will utilize a cross-dock location the company
> will lease in Dallas, Texas. Again using its own trucks and
> drivers, Third Coast Fresh will transport the goods from its
> Houston warehouse to the cross-dock location in Dallas,
> and from that point, Third Coast Fresh will deliver the
> goods to the Troop sites from that location as required.

(R4, tab 20 at 429-30) "Based on these statements," SBA stated that its previous determination had found "TCF was taking ownership or possession of the produce and TCF was in compliance with...the *Nonmanufacturer Rule*" (R4, tab 20 at 430).

10. SBA then noted the contracting officer's current claim that "TCF was using Brothers Produce exclusively to perform all the work on the contract." SBA stated that TCF had provided the following response to that accusation:

> During the initial solicitation, TCF had every intention of
> opening the cross-dock facility in Dallas. Consequently,
> for the portion of the solicitation awarded to TCF, it is not
> economically feasible for TCF to deliver via the Dallas
> cross-dock facility. TCF initially bid to utilize the Dallas
> cross-dock based on the entire contract potential and
> therefore was accurate in representing that delivery model.
> TCF does purchase its own inventory, and is not dependent
> upon any other entity for purchasing, warehousing, or
> distribution from its Houston warehouse. For the
> subsequent small award for the Dallas solicitation, TCF
> would financially suffer to perform delivery via the Dallas
> cross-dock, and therefore is using Brothers Produce as the
> subcontractor for the business.

SBA also quoted TCF to say:

> TCF does not argue the fact that Brothers Produce is
> providing the distribution services for the four awarded
> locations near Dallas of the Dallas solicitation to TCF, but
> TCF is delivering the three locations south of Houston of
> the Dallas Solicitation. TCF will not be using the

5

cross-dock facility in Dallas to deliver the four customers
as it will create a financial hardship....

(R4, tab 20 at 430-31) SBA added that "[a] chart submitted by TCF illustrates that 95% of the contract has been fulfilled by Brothers Produce and 5% has been fulfilled by TCF" (*id.* at 431).

11. Based upon the evidence provided by TCF, SBA found that TCF failed to comply with the element of the Nonmanufacturing Rule located at 13 C.F.R. § 121.406(b)(1)(iii), requiring a firm to take "ownership or possession of the item(s) with its personnel, equipment or facilities in a manner consistent with industry practice." SBA based its conclusion upon the fact that "TCF openly admits that Brothers Produce is providing the produce and delivery service to the Dallas locations." Thus, SBA ruled that "TCF...cannot be considered small for the procurement." SBA recognized that under 13 C.F.R. § 121.404(d), size should be determined as of the date of submission of a contractor's final proposal revision, but found that "[i]n this unique situation, [it] must use information available after the date the final proposals were due since the information supplied in TCF's proposal and response to the initial size protest have not been TCF's method of operation once the contract was awarded." (Compl. ¶ 28; R4, tab 20 at 431) TCF did not appeal this decision to SBA's Office of Hearings and Appeals (OHA) (compl. ¶ 29).

12. On 26 June 2014, the contracting officer sent TCF a "Show Cause Notice," stating that TCF had exclusively relied upon Brothers Produce to perform all contract work, noting SBA's conclusion that TCF did not qualify as small for the procurement, and that TCF had departed from its prior representations (R4, tab 21). The letter informed TCF that the contracting officer was considering terminating the contract for cause, and provided TCF an opportunity "to present reasons for TCF's failure to comply with the terms outlined in its proposal and relied upon by DLA Troop Support in making the instant award" (*id.* at 434). TCF's response conceded that Brothers Produce was "providing the distribution services for the four locations near Dallas," but noted TCF was delivering to locations near Houston. It requested "that the terms of the contract be revised to allow the current delivery method." (R4, tab 22)

13. On 25 August 2014, the contracting officer issued a modification terminating the contract for cause (R4, tab 23). The contracting officer also sent TCF a Notice of Termination stating it had "failed to perform in the manner in which it represented to both [SBA] and the Contracting Officer," stressing SBA's conclusion that TCF did not qualify as a small business for the procurement (R4, tab 24). TCF appealed the termination to this Board on 21 November 2014. TCF's complaint seeks conversion of the termination for cause to a termination for convenience, "and further requests that the Board order [the government to] pay to TCF its contract costs incurred through the date of the wrongful termination," as well as legal fees (compl. at 9).

6

14. The government moves to dismiss the appeal, or seeks summary judgment. It contends the Board lacks jurisdiction because TCF failed to appeal SBA's 30 May 2014 SBA size determination to OHA. It also argues the appeal should be dismissed for failure to state a claim or rejected upon summary judgment.

## DECISION

### I. *Background*

To address these motions some background review is necessary. Under the Small Business Act, a portion of the government's contracts for property and services is set aside for award to small-business concerns. 15 U.S.C. §§ 631(a), 644(a); *see Rotech Healthcare Inc. v. United States,* 71 Fed. Cl. 393, 412 (2006). The SBA is granted the authority to establish standards for determining whether a firm qualifies as a small business. *See* 15 U.S.C. § 632; 13 C.F.R. §§ 121.101-121.102; FAR 19.102(a). Generally, it assigns North American Industrial Classification System (NAICS) codes to particular economic sectors and then identifies a maximum number of employees or annual receipts that a firm in that sector can have and remain qualified as small. 13 C.F.R. §§ 121.101, 121.201; FAR 19.102(b); *see generally DSE, Inc. v. United States,* 169 F.3d 21, 25-26 (D.C. Cir. 1999); *Rotech Healthcare,* 71 Fed. Cl. at 407. An agency pursuing a procurement that has been set aside for small business selects the appropriate NAICS code "which best describes the principal purpose of the product or service being acquired" and provides it in the solicitation. 13 C.F.R. § 121.402(b). That code's corresponding size standard becomes the size limit for consideration as a small business entity for the procurement. 13 C.F.R. § 121.402(a).

In addition to the size requirements applicable to a particular procurement, to qualify for a small business set-aside, a nonmanufacturing firm providing manufactured products or supplies must comply with the Nonmanufacturer Rule contained at 13 C.F.R. § 121.406. The section provides the following in pertinent part:

> (a) *General.* In order to qualify as a small business concern for a small business set-aside...to provide manufactured products or other supply items, an offeror must either:
>
> > (1) Be the manufacturer or producer of the end item being procured (and the end item must be manufactured or produced in the United States); or

7

(2) Comply with the requirements of paragraph (b), (c) or (d) of this section as a nonmanufacturer, a kit assembler or a supplier under Simplified Acquisition Procedures.

(b) *Nonmanufacturers.*

(1) A firm may qualify as a small business concern for a requirement to provide manufactured products or other supply items as a nonmanufacturer if it:

(i) Does not exceed 500 employees;

(ii) Is primarily engaged in the retail or wholesale trade and normally sells the type of item being supplied;

(iii) Takes ownership or possession of the item(s) with its personnel, equipment or facilities in a manner consistent with industry practice; and

(iv) Will supply the end item of a small business manufacturer, processor or producer made in the United States, or obtains a waiver of such requirement....[1]

The Nonmanufacturer Rule prevents firms "from acting as mere conduits for the products of large manufacturers on small business set-aside procurements." *Rotech Healthcare,* 71 Fed. Cl. at 412 (discussing the rule's origins including its statutory codification at 15 U.S.C. § 637(a)(17)). According to 13 C.F.R. § 121.404(d), "[s]ize status for purposes of compliance with the nonmanufacturer rule...is determined as of the date of the final proposal revision for negotiated acquisitions and final bid for sealed bidding."

To receive an award of a small business set-aside contract, an offeror must represent in good faith that it is a small business. FAR 19.301-1(a). Typically, the contracting officer shall accept that representation. FAR 19.301-1(b). However, a firm's small business status may be protested by, among others, unsuccessful offerors, or by the

---

[1] DLA obtained a waiver of this fourth component for this procurement (R4, tab 1 at 4, tab 8 at 235, tab 20 at 431).

8

contracting officer before or after contract award. 13 C.F.R. §§ 121.1001(a)(1), 121.1004(b); FAR 19.302. The protest is initially decided by the SBA government contracting area office serving the area where the headquarters of the protested concern is located. 13 C.F.R. §§ 121.1003, 121.1009(a); FAR 19.302(g)(2). That determination is appealable to OHA within 15 calendar days of its receipt. *See* 13 C.F.R. §§ 121.1101; 134.102(k), 134.304(a); FAR 19.302(i). If no appeal is taken, then the area office determination is SBA's final decision. 13 C.F.R. § 121.1101(a); FAR 19.302(g)(2). Size protests are within the exclusive jurisdiction of SBA. Its rulings are binding on the contracting officer and controlling here. FAR 19.301-1(c); *J.H. King, Inc.*, ASBCA Nos. 30587, 34846, 89-1 BCA ¶ 21,396 at 107,865; *see also W.H. Smith Hardware Co.*, ASBCA No. 34532, 89-2 BCA ¶ 21,606 at 108,774 (noting that "this Board will not second-guess [SBA's] determinations").

Significantly, after a small business set-aside contract is awarded, if the contracting officer receives a determination from the area office that a concern is not an eligible small business for the procurement, and no appeal is filed with OHA, "the contracting officer shall terminate the award." 13 C.F.R. § 121.1009(g)(2)(i). Once a final decision has been issued (either a determination that was not timely appealed or an appellate decision), SBA cannot reopen a size determination. 13 C.F.R. § 121.1009(h).

II. *Jurisdiction*

A. TCF's Challenge to the Termination for Cause

The government argues the Board lacks jurisdiction to entertain TCF's challenge to the termination for cause because TCF did not appeal the 30 May 2014 SBA area office determination, finding TCF was other than small, to OHA. It contends that because TCF failed to do that, this Board does not have jurisdiction to review the merits of the size determination.

TCF has not attempted to directly appeal the SBA size determination. It has appealed the contracting officer's final decision terminating the contract for cause.[2] The Board's jurisdiction to consider such an appeal is governed by the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. Within 90 days of receiving a contracting officer's final decision a contractor may appeal to this Board. 41 U.S.C. § 7104(a). TCF's 21 November 2014 appeal was within 90 days of the contracting officer's 25 August 2014 Notice of Termination. Accordingly, the Board possesses jurisdiction to consider TCF's challenge to its termination. The government's contentions about the binding effect of SBA's size ruling relate to the appeal's merit, not the Board's jurisdiction to consider it.

---

[2] As part of its challenge to its termination for cause, TCF does attempt to re-litigate certain matters presented to SBA. Those arguments are rejected below.

B. TCF's Request for Costs

One component of the appeal over which the Board lacks jurisdiction is TCF's additional request for an order to the government to "pay to TCF its contract costs incurred through the date of the wrongful termination." Though the contracting officer's decision terminating the contract is ripe for review by the Board, there is no monetary claim from TCF in the record seeking any of its contract costs. In the absence of such a monetary claim, the Board does not have jurisdiction to entertain that portion of the complaint. *Starwin Indus., Inc.,* ASBCA No. 56720 *et al.,* 10-1 BCA ¶ 34,424.

III.    *Summary Judgment*[3]

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (quoting *First Nat. Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).

As observed, the government bears the initial burden of proving this termination for cause was justified and if it does TCF must show that its default was excusable. *Double B Enters.,* 01-1 BCA ¶ 31,396 at 155,110. The government was entitled to "terminate [the] contract, or any part [of it], for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions" (SOF ¶ 5). The

---

[3] The government also contends that the appeal should be dismissed for failure to state a claim because the allegations of TCF's complaint establish a prima facie case that the government's termination for cause was proper. Typically, a motion to dismiss for failure to state a claim is employed to defeat a complaint that fails to plausibly suggest a showing of entitlement or raise a right to relief above the speculative level. *Am. Gen. Trading & Contracting, WLL,* ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,640. However, this appeal from a termination for cause is a government claim. The government bears the initial burden of proving the termination was justified. *Double B Enters., Inc.,* ASBCA Nos. 52010, 52192, 01-1 BCA ¶ 31,396 at 155,110. Although the Board's rules normally require appellants to file a complaint, the underlying burden of proof remains with the government. *See Beechcraft Def. Co.,* ASBCA No. 59173, 14-1 BCA ¶ 35,592. Because the government's motion relies upon matters outside the pleadings to meet its burden, it is considered as one for summary judgment. *See* FED. R. CIV. P. 12(d).

government maintains that TCF failed to comply with the contract's requirement that TCF be a small business, as found by SBA's 30 May 2014 second size determination that TCF was other than small for this procurement. The government says the contracting officer was required to terminate the contract by 13 C.F.R. § 121.1009(g)(2)(i) (requiring termination in the event an SBA area office finds a concern to not be small and there is no appeal to OHA), and it was appropriate for the termination to be for cause.

TCF does not deny that SBA's size determination dictated that its contract be terminated under 13 C.F.R. § 121.1009(g)(2)(i). However, TCF contends that nothing in that regulation required a termination for cause, instead of for convenience under FAR 52.212-4(l), and that it has not defaulted upon its contractual obligations (app. opp'n at 22).

It is undisputed that this procurement was set-aside for award only to small business concerns (SOF ¶ 1). *See* FAR 19.301-1(a), 52.219-6(c). An offeror's small business status is subject to protest by the contracting officer to SBA at any time, and SBA's determination is binding. 13 C.F.R. §§ 121.1001(a), 121.1004(b); FAR 19.301-1(c). Though SBA found in the first size protest that TCF was small, after award it superseded that ruling, finding TCF had failed to comply with the Nonmanufacturer Rule (SOF ¶¶ 4, 9-11). Given SBA's post-award determination that TCF was not an eligible small business for this procurement, and TCF's failure to appeal that ruling, the contracting officer was required to terminate the contract by 13 C.F.R. § 121.1009(g)(2)(i).

The remaining question is whether TCF's failure to perform the contract in accordance with the Nonmanufacturer Rule, prompting SBA to rule that it was other than small for this procurement, constitutes a default or failure to comply with any terms and conditions of the contract, justifying a termination for cause. The component of the rule that SBA found TCF failed to follow was 13 C.F.R. § 121.406(b)(1)(iii), requiring a firm to take "ownership or possession of the item(s) with its personnel, equipment or facilities in a manner consistent with industry practice" (SOF ¶ 11). This rule imposes requirements upon contract performance. SBA held that, instead of taking ownership of the produce itself at its Houston facility and shipping to customers in Dallas, as it represented it would during the first protest, TCF used Brothers Produce to provide and deliver the goods, which did not comply with section 121.406(b)(1)(iii) (SOF ¶¶ 9-11). However, TCF maintains that it was only required to represent to SBA in good faith at the time of award that it would comply with this rule. It suggests that, because 13 C.F.R. § 404(d) says that size is determined at the time of proposal, it did not have to follow through upon its representation and perform in accordance with it (app. statement of facts ¶ 64). SBA obviously disagreed with that theory. It acknowledged the language of section 404(d), but still revoked its recognition that TCF qualified as a small concern for this procurement (SOF ¶ 11). As also already noted, if a firm's small business status is

11

challenged, SBA's evaluation is binding upon this Board. FAR 19.301-1(c); *W.H. Smith Hardware,* 89-2 BCA ¶ 21,606 at 108,775.

Additionally, "[t]he clear purpose of the non-manufacturer rule is 'to prevent brokerage-type arrangements whereby small 'front' organizations are set up to bid [on] government contracts, but furnish the supplies of a large concern.'" *Rotech Healthcare,* 71 Fed. Cl. at 412 (quoting *Size Appeal of BNF Mfg. Corp.,* SBA No. 633 (1973)). It would be senseless if contractors could merely say they will comply with section 121.406(b)(1)(iii) at the time of proposal, but not have to perform accordingly. Qualifying as a small concern was a condition of the contract. FAR 52.219-6(c). "Tak[ing] ownership or possession of the item(s) with its personnel, equipment or facilities" was a condition for TCF to qualify as a small concern. 13 C.F.R. § 121.406(b)(1)(iii). SBA found that TCF failed to do that. Accordingly, the undisputed facts demonstrate that TCF did not comply with a condition and performance requirement of the contract. *See Barton Chem. Corp.,* ASBCA No. 29302, 87-1 BCA ¶ 19,623 (acknowledging that a contractor's proposal after award to perform in a manner SBA found would have made it other than small was properly rejected by the contracting officer because it failed to comply with the contract's terms). TCF's response to the government's show cause notice essentially conceded it had not complied with the contract when it requested "that the terms of the contract be revised to allow the current delivery method" (SOF ¶ 12). The government has therefore established a prima facie case that the termination for cause was proper.

Given that the government has carried its initial burden to demonstrate that the termination for cause was justified, to obtain a conversion of the termination for cause to one for convenience TCF must show its default was caused by an occurrence beyond its control and without its fault or negligence, or that the contracting officer decision was arbitrary or capricious or an abuse of discretion. *See Gen. Injectables & Vaccines, Inc. v. Gates,* 519 F.3d 1360, 1363 (Fed. Cir. 2008); *Shubhada Indus., Inc.,* ASBCA No. 54016, 08-1 BCA ¶ 33,733 at 167,017. To defeat summary judgment, TCF must "make a showing sufficient to establish the existence of an element essential to" any matter "on which [TCF] will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322-23.

TCF relies upon the requirement that a default termination must follow an exercise of discretion, suggesting the contracting officer exercised none here. *See Nuclear Research Corp. v. United States,* 814 F.2d 647, 649 (Fed. Cir. 1987) (observing that the contracting officer "is required to exercise his discretion, to make sure that termination is in the best interests of the Government"); *see also McDonnell Douglas Corp v. United States,* 182 F.3d 1319, 1326 (Fed. Cir. 1999) (concluding a termination for default must be related to contract performance); *DCX, Inc. v. Perry,* 79 F.3d 132, 135 (Fed. Cir. 1996) (acknowledging that a contracting officer may not abuse his discretion). The contracting officer possesses broad discretion in deciding to terminate and the decision will only be overturned when it is arbitrary, capricious or an abuse of discretion. *ADT Construction Grp., Inc.,* ASBCA No. 55358, 13 BCA ¶ 35,307 at 173,312. Accordingly,

12

the burden of proving abuse of discretion is very high. *Empire Energy Mgmt. Sys., Inc.,* ASBCA No. 46741, 03-1 BCA ¶ 32,079 at 158,553. Four factors are relevant to that analysis: 1) whether the government official acted with subjective bad faith; 2) whether the official had a reasonable, contract-related basis supporting the decision; 3) the amount of discretion vested in the official whose action is being reviewed; and 4) whether a proven violation of relevant statutes or regulations can render the decision arbitrary and capricious. *ADT Construction,* 13 BCA ¶ 35,307 at 173,312.

TCF contends the government's brief admits that the contracting officer did not exercise any discretion because he wrongly believed he had no choice but to terminate for default (app. opp'n at 23). However, the government's brief says only that it was required to terminate the contract under 13 C.F.R. § 121.1009 (gov't mot. at 14). It does not suggest that the contracting officer failed to exercise proper discretion in choosing default, nor has TCF otherwise presented evidence that the termination was a mere pretext unrelated to its failure to perform as promised. *See McDonnell Douglas,* 182 F.3d at 1326.

TCF also stresses that it represented itself in good faith to be a small business. Regardless of whether TCF originally meant to meet the criteria of a small business, SBA found that it did not, and TCF concedes that its decision to alter its manner of performance was a voluntary one made for business reasons. According to TCF's chief operating officer, TCF originally intended to perform the contract as it initially represented to SBA in the first size protest, using its own trucks and Dallas cross-dock facility to deliver produce. But, after the government split the contract and limited TCF's award to Group 1, TCF decided to change its manner of performance and order product from suppliers who drop-shipped them to customers. (SOF ¶ 6; Abess decl. ¶¶ 4-7) The solicitation informed TCF that the government might not award all of the groups to a single contractor (SOF ¶ 2). That event did not relieve TCF from complying with the Nonmanufacturer Rule. Given SBA's determination that TCF was other than small for this procurement, the contracting officer also possessed a reasonable, contract related basis for the decision.

TCF also contends that the contracting officer delayed terminating the contract an unreasonable amount of time, which constituted an abuse of discretion and a waiver of the government's right to terminate for cause. It is well-established that the government may waive its right to terminate a contract for default when it "allows 'a delinquent contractor to continue [substantial] performance past a due date,' under circumstances that justify a conclusion that the default has been excused." *State of Fla. Dept. of Ins. v. United States,* 81 F.3d 1093, 1096 (Fed. Cir. 1996) (quoting *DeVito v. United States,* 413 F.2d 1147, 1153-54 (Ct. Cl. 1969)). The waiver doctrine protects contractors led to believe time is no longer of the essence. *Id.* TCF's contract was not terminated for failing to meet a delivery deadline. Instead, it failed to qualify

as a small concern for this procurement. TCF has not cited any precedent applying the waiver doctrine to this type of default.

Even if the waiver doctrine applies here, nothing gave TCF reason to conclude that it was excused from complying with the Nonmanufacturer Rule. The contract was awarded on 27 February 2014 (SOF ¶ 5). The contracting officer became aware during the first month of performance that TCF was using Brothers Produce to perform the work (SOF ¶ 7). Accordingly, the contracting officer held a 16 April 2014 discussion with Mr. Finch of TCF, who confirmed that TCF was using Brothers Produce to make deliveries (*id.*). On 6 May 2014, the contracting officer initiated a size protest, communicating his concern that TCF was not performing in conformance with its prior representations, and seeking a determination from SBA about TCF's compliance with the small business rules (SOF ¶ 8).

Because the contracting officer lacked authority to rule on TCF's size, he had no basis to terminate TCF's contract until the SBA area office issued its 30 May 2014 determination that TCF had failed to comply with the Nonmanufacturer Rule and was therefore other than small for the procurement (SOF ¶ 9). Once TCF's 15 days to appeal to OHA expired (*see* 13 C.F.R. § 134.304(a)), the contracting officer was required to terminate the contract pursuant to 13 C.F.R. § 121.1009(g)(2)(i). Accordingly, on 26 June 2014, the contracting officer issued a "Show Cause Notice," informing TCF that he was considering terminating the contract for cause, and providing TCF an opportunity to respond. TCF responded and was terminated on 25 August. (SOF ¶¶ 12-13) Thus, TCF was consistently on notice of concerns about its small business qualification at least as early as 16 April, leading to the contracting officer's size protest to SBA, show cause notice, and eventual termination of the contract. TCF has presented no evidence demonstrating unreasonable contracting officer delay or forbearance.[4]

---

[4] TCF provides the declaration of its chief financial officer, purporting to establish issues of fact regarding the events. He asserts that "DLA was aware...[that TCF] would utilize subcontractors to perform portions of the Contract" (Abess decl. ¶ 13). He declares that "DLA provided [TCF] with input, and ultimately approval, prior to assignment of work of [TCF's] subcontractors; including Brothers Produce" (*id.* ¶ 14(b)). He also claims that from contract award until termination the contracting officer "encouraged [TCF] to perform the contract as if no problems existed with the manner of performance [TCF] provided" (*id.* ¶ 21). These vague, non-specific statements are inadequate to establish genuine issues of fact precluding summary judgment. *See Rosemount, Inc.*, ASBCA No. 37520, 95-2 BCA ¶ 27,770 at 138,456. Additionally, none of TCF's evidence establishes that it was given reason to believe that it need not comply with the Nonmanufacturer Rule.

TCF also advances several challenges to the SBA proceedings and findings leading to its determination that TCF was not small for this procurement. It claims the contracting officer's representations to SBA were inaccurate (app. statement of facts ¶¶ 49, 52, 55). It challenges the government's assertion, and SBA's determination, that TCF made no deliveries itself and delegated performance to Brothers Produce (*id.* ¶¶ 40, 44-45). Similarly, it disputes SBA's conclusion that it failed to take ownership or possession of items with its personnel, equipment, or facilities in a manner consistent with industry practice, and therefore did not comply with the Nonmanufacturer Rule (*id.* ¶¶ 19, 42-43, 51-53, 58). TCF contends that SBA ruled in its favor in size protests filed in other procurements presenting virtually identical circumstances (*id.* ¶¶ 56-57). All of these contentions seek to re-litigate SBA's size determination for this procurement, which TCF did not appeal to OHA. SBA's findings are therefore final and binding. Accordingly, TCF has failed to present evidence excusing its default.

## CONCLUSION

The government's motion to dismiss for lack of jurisdiction is granted in part and denied in part.

The government has justified its termination for cause, and TCF has failed to present adequate evidence excusing its default. Accordingly, the government's motion for summary judgment is granted. The termination for cause is sustained, and the appeal is therefore denied.

Dated: 6 April 2016

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

15

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59696, Appeal of Third Coast Fresh Distribution, L.L.C., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

16